THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT BUTLER,

                Petitioner,               OPINION AND ORDER

   v.

                                             20-cv-515-wmc

TAYLOR COUNTY, Wisconsin,
TAYLOR COUNTY HUMAN SERVICES,
and JIM METZ, in his capacity as
Chairman, Taylor County Board,

                Respondents.

Robert Butler is a civil detainee in the custody of the Taylor County Department of Human Services, subject to an order of temporary protective placement and awaiting a jury trial to determine whether that placement should be made permanent pursuant to Chapter 55 of the Wisconsin Statutes. Through his counsel, the Wisconsin State Public Defender's Office, Butler recently filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Accordingly, the petition is before the court for initial screening under Rule 4 of the Rules Governing Section 2254 Cases, which applies to petitions not brought under § 2254. *See* Rule 1(b), Rules Governing Section 2254 Cases. Because it is plain from the petition and its attachments that petitioner is not entitled to federal habeas relief, the petition will be dismissed.

BACKGROUND[1]

Petitioner Robert Butler is 71 years old and has been diagnosed with dementia and

---

[1] The petition and its attachments fairly allege the following facts, which will be deemed true for purposes of screening.

anxiety. On February 3, 2020, local law enforcement initially detained him on an emergency basis under Chapter 51 of the Wisconsin Statutes, finding "cause to believe that [R.L.B.] is mentally ill, drug dependent, or developmentally disabled" and "evidences behavior which constitutes a substantial probability of physical harm to self or to others[.]" On February 6, at a hearing at which Butler was represented by counsel, a Taylor County court commissioner granted a motion by Taylor County Human Services to convert the proceedings to one for guardianship and protective placement or services under Chapter 55. In addition, after finding probable cause to believe Butler was a fit subject for guardianship and protective placement or services, the court commissioner ordered him temporarily placed at a nursing home for a period of 30 days, pending a final hearing on Taylor County's petition for protective placement or services as authorized by Wis. Stat. § 55.135(5).[2]

Under Wis. Stat. § 55.10(1), "[a] petition for protective placement or protective services shall be heard within 60 days after it is filed unless an extension of this time is requested by the petitioner, the individual sought to be protected or the individual's

---

[2] Section 55.135(5) states that:

> Upon finding probable cause under sub. (4), the court may order temporary protective placement up to 30 days pending the hearing for a permanent protective placement, or the court may order such protective services as may be required. If the court orders under this subsection an individual who has a developmental disability to receive temporary protective placement in an intermediate facility or in a nursing facility, and if at the hearing for permanent protective placement the court orders that the individual be provided protective placement, the court may, before commencement of permanent protective placement, extend the temporary protective placement order for not more than 90 days if necessary for the county department that is participating in the program under s. 46.278 or, if s. 46.279(4m) applies, the department's contractor to develop the plan required under s. 46.279(4).

guardian ad litem, or the county department, in which case the court may extend the date for hearing by up to 45 days." Under Wis. Stat. § 55.135(5), as quoted in the footnote above, the circuit court may order that a temporary protective placement be extended for not more than 90 days. Ultimately, the individual sought to be protected has the right to demand a timely trial by jury on the question of a permanent protective placement under Wis. Stat. § 55.10(4)(c).

On February 26, Butler, through counsel, demanded a jury trial, and after he consented to one adjournment, the jury trial was scheduled for April 28, 2020. By operation of the statutory time periods set out in Wis. Stat. §§ 55.135(5) and 55.10(1), the *latest* Butler could be tried was May 6, 2020. However, in late March, like many other courts across the country, including this one, the Wisconsin Supreme Court issued orders suspending jury trials until at least May 22, 2020, in light of the public health emergency posed by the Covid-19 pandemic. *See In re the Matter of Jury Trials During the Covid-19 Pandemic* (Wis. Sup. Ct. Mar. 22, 2020). Consistent with those orders, on March 30, the Taylor County Circuit Court postponed Butler's jury trial until May 22, 2020. The Taylor County Circuit Court also later extended Butler's temporary protective placement until May 26, 2020.

On April 2, Butler petitioned the Wisconsin Supreme Court for an exception to its order of jury trial suspensions, which the Wisconsin Supreme Court summarily denied on May 4, offering no explanation for its decision. On May 22, again relying on the Wisconsin Supreme Court's suspension orders, the Taylor County Circuit Court next entered a third order, this time extending Butler's protective placement until August 26, 2020, which is

the date his jury trial is currently scheduled.

Petitioner, by counsel, now asks this court (1) to vacate the latest order for temporary protective placement and (2) order his release from custody.

OPINION

I. The Petition Fails to State a Plausible Constitutional Claim

As a pretrial detainee, petitioner has properly invoked 28 U.S.C. § 2241 as this court's basis for jurisdiction over his petition. *Neville v. Cavanagh*, 611 F.2d 673, 675 (7th Cir. 1979). Just as with petitions filed under 28 U.S.C. § 2254, however, federal relief is available under § 2241 only if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Alleged violations of state law are not cognizable on federal habeas corpus review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that federal habeas relief does not lie for errors of state law") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)) (internal quotations omitted); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2011) ("it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions.") (quoting *Estelle*, 502 U.S. at 67–68).

Here, petitioner claims that he is in custody in violation of the Fourteenth Amendment's guarantee of due process of law. Specifically, according to the petition, the state trial court and the Wisconsin Supreme Court are violating his rights to due process in three ways: (1) by continuing to detain him "in direct contravention of due process procedures established by the State . . . [n]amely, Mr. Butler's right to a timely jury trial

4

on the basis of his detention"; (2) by applying state law in such an "arbitrary and capricious" manner so as to constitute an independent due process violation; and (3) by issuing orders suspending jury trials and declining to grant an exception to Butler, an act he construes as legislating by "judicial construction."

Even under the most liberal reading of the petition, however, Butler has failed to state a cognizable due process claim. The Fourteenth Amendment prohibits a state from depriving a person of life, liberty, or property without due process of law. Courts analyzing procedural due process claims must answer two questions: (1) whether the petitioner has been deprived of a protected interest; and (2) if so, what degree of process is due to the individual before he can be deprived of that interest. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996); *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982). Although the first inquiry may be informed by state law, "the task of defining the procedural protections which attach to that interest is wholly a matter of federal constitutional law," accomplished through application of the balancing analysis of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Jurich*, 681 F.2d at 1097–98.

Certainly, petitioner has a substantial liberty interest in avoiding further, civil confinement to a nursing home. *See Vitek v. Jones*, 445 U.S. 480, 491–492 (1980) (commitment to mental hospital entails "'a massive curtailment of liberty,'" and requires due process protection); *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (there is a "substantial liberty interest in not being confined unnecessarily for medical treatment"); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"). Indeed, to protect

5

against unlawful deprivations of this interest, Wisconsin purports to make "full due process statutorily available to individuals subject to involuntary guardianship and protective placement petitions." *In re Guardianship of Therese B.*, 2003 WI App 223, ¶ 1, 267 Wis. 2d 310, 314, 671 N.W.2d 377, 379. More specifically, under Chapter 55 of the Wisconsin Statutes, a prospective ward is provided: (1) notice, § 55.09; (2) a hearing, § 55.10; (3) the right to counsel, § 55.10(4)(a); (4) the appointment of a guardian ad litem, § 55.10(b); and (5) the right to trial by jury and cross-examination of witnesses, § 55.10(c).

Petitioner makes no claim that Wisconsin's overall statutory scheme fails to meet federal due process requirements, nor does he claim that the state has failed to provide him with these statutory protections, save one -- his right to a jury trial. Even as to this right, there is an important qualification: petitioner does not contend that Wisconsin has *denied* him his right to a jury trial, but rather has denied him his right to have it within 90 days as ordinarily required by statute. As petitioner seems to recognize, however, these are not ordinary times, and his right to a hearing on the petition for protective placement within 90 days is prescribed only by Wisconsin law, not federal law.

Although the Fourteenth Amendment's guarantee of due process includes the right to be heard at a "meaningful time," *Fuentes v. Shevin*, 407 U.S. 67, 80 (1983), "there is no bright-line rule [under the Constitution] for determining when protracted review proceedings run afoul of due process." *Campos v. Cook Cty.*, 932 F.3d 972, 976–77 (7th Cir. 2019) (citing *Mathews*, 424 U.S. at 335). In *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564–65 (1983), the Supreme Court endorsed the use of the speedy trial, four-factor balancing test of *Barker v.*

*Wingo*, 407 U.S. 514 (1972), to assess a due process claim based on undue delay, but petitioner does not cite *Barker* or allege that his due process rights have been violated under its framework.

Instead, petitioner's due process claim appears to rest entirely on Wisconsin's failure to provide him with a jury trial within the 90-day timeline specified by Chapter 55. Such allegations are inadequate to state a federal due process violation. *See Swarthout*, 562 U.S. at 221–22 (due process does not require federal courts to review "the application of all state-prescribed procedures in cases involving liberty or property interests"); *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) ("Even when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a substantive liberty or property interest."), *reh'g denied* (June 8, 2018) (citation omitted); *Pro–Eco, Inc. v. Bd. of Comm'rs*, 57 F.3d 505, 514 (7th Cir. 1995) (a violation of a state procedural statute does not offend the Constitution); *Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right."); *Coniston Corp. v. Village of Hoffman Estates, et al.*, 844 F.2d 461, 467 (7th Cir. 1988) ("A violation of state law is not a denial of due process . . . .") (citations omitted).

Even if petitioner's due process claim had been premised on *Barker*, it would still lack merit on the present facts. In determining whether a pretrial delay amounts to a constitutional violation under *Barker*, the court consider: "(1) the length of the delay, (2)

7

the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant caused by the delay." *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992) (citing *Barker*, 407 U.S. at 530 (1972)). Assuming Butler's hearing occurs as scheduled on August 26, the amount of delay would be six-and-a-half months, less than the one-year period generally thought to be presumptively prejudicial. *See United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007). Even more damaging to petitioner's due process claim is the reason for the delay -- namely, the COVID-19 pandemic and state and local public health orders limiting in-person, indoor gatherings of large groups of people. This delay was unforeseeable and beyond any party's control, and constitutes good cause under *Barker*. Finally, petitioner has not suggested that he has suffered any prejudice as a result of the delay. For all these reasons, petitioner has not made out a colorable due process violation based on the delay in his trial.

As for petitioner's more unique approach to his due process claim, he argues that the Wisconsin Supreme Court's order declining to grant him an exception from the jury-trial suspension order was "so arbitrary or capricious as to constitute an independent due process . . . violation." (Pet. (dkt. #1) 6). In support, he cites *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), in which the Supreme Court actually held a claim that a state court misapplied its own aggravating circumstance standard in a death penalty case stated only a state law violation that was not cognizable on federal habeas review. At most, the Court held that "federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited . . . to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth

Amendment violation." *Id*. at 780. That standard was met, explained the Court, "if and only if no reasonable sentencer" could have found that the aggravating circumstance applied. *Id*. at 783.

Petitioner does not explain whether or how the *Jeffers* standard would apply in a case involving a statewide order temporarily suspending jury trials in the face of an ongoing public health emergency. Even assuming for the sake of argument that one might somehow extrapolate from *Jeffers* a rule that constitutionally protected due process is violated if "no reasonable court" would reach the same conclusion, petitioner could *not* make this showing. As noted already, courts across the country---including this one---have temporarily suspended jury trials in response to the health and safety risks posed by the Covid-19 pandemic. *See COVID-19 roundup: Court closures continue*, 2020 WL 1329196 (March 23, 2020); *Update on the court's response to coronavirus*, (W.D. Wis. May 1, 2010) (extending suspension of jury trials through June 30, 2020). Apart from Chapter 55's time limitations, which cannot be the basis of a constitutional violation for reasons already discussed, petitioner cites no factors or special circumstance to distinguish his situation from those of the numerous other civil and criminal detainees whose trials have been temporarily delayed as a result of the pandemic. Accordingly, petitioner has not shown that the Wisconsin Supreme Court's refusal to exempt him from a temporary suspension order was so "arbitrary and capricious" as to amount to an independent due process violation.

Finally, petitioner cites *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964), for the proposition that a state court can violate the due process clause by judicial construction. Contrary to petitioner's suggestion, however, the *Bouie* decision also has no application to

9

the facts here. In that case, the Supreme Court held that the principle of fair notice embodied in the due process clause prohibited the State from obtaining trespassing convictions against the defendants based on the South Carolina Supreme Court's judicial gloss on a statute when reviewing the defendants' original convictions. *Bouie*, 378 U.S. at 350-54. In contrast, this case does not involve a criminal prosecution, fair notice, or any facts remotely similar to those at issue in *Bouie*. In sum, even when read liberally, the petitioner has failed to make out a plausible claim that Taylor County's retaining petitioner in custody violates his Fourteenth Amendment right to due process.

**II. If the Petition States a Plausible Claim, then Abstention is Required**

Assuming for the sake of argument that the petition fairly states a constitutional claim, federal habeas relief would still not be appropriate. Absent exceptional circumstances, a federal court must abstain from interfering with ongoing state court proceedings that are judicial in nature, involve important state interests, and provide an adequate opportunity to raise the federal claims. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (involving an attempt to enjoin pending state proceedings to enforce a state's criminal laws); *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007) (setting forth the relevant test for determining when the "*Younger* abstention doctrine" applies).

While the *Younger* abstention doctrine certainly applies to civil commitment proceedings, *Sweeney v. Bartow*, 612 F.3d 571, 573 (7th Cir. 2010), exceptional circumstances include pending state court proceedings motivated by a desire to harass or conducted in bad faith, *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596-97 (7th Cir. 2007),

or where "immediate federal intervention is necessary to prevent the challenge from becoming moot." *Sweeney*, 612 F.3d at 573. This latter circumstance is met when the petitioner asserts that the state proceeding violates his right to a speedy trial or placed him in double jeopardy -- "[f]or then the eventual decision by the state court would come too late to secure his rights." *Id*.

However, when the petitioner seeks to *enjoin* the pending state court proceedings based on a speedy trial claim -- rather than to enforce his right to a speedy trial by asking the federal court to order that a trial take place – then the court should abstain. *See Barrett v. Scott*, No. 16-CV-3073, 2016 WL 3661103, at *2 (C.D. Ill. July 5, 2016); *Powell v. Saddler*, No. 12 C 2928, 2012 WL 3880198, at * 6 (N.D. Ill. 2012) (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490-91 (1973) (finding petitioner could raise his speedy trial claim by way of federal habeas corpus because he sought a trial on the three-year old indictment and made repeated demands for trial in the state courts and his habeas petition did not seek to "abort a state proceeding" or "disrupt the orderly functioning of state judicial processes"); *Neville*, 611 F.2d at 676 (distinguishing *Braden* and finding the district court properly abstained even though the petitioner presented to the state courts his Interstate Agreement on Detainers Act claim regarding the failure to try him before returning him to federal custody where the petitioner sought dismissal of the indictments).

Finally, even if the petition in this case is construed as asserting a speedy trial claim, abstention is warranted. Petitioner does not suggest that the ongoing Chapter 55 proceedings are motivated by harassment, bias, or bad faith, nor has he demanded a trial

in the state court or asked this court to order such a trial take place. As he admits, his trial is already scheduled for August 26, 2020, now less than 2 months away. Instead, petitioner effectively asks this court to enjoin the ongoing state court proceeding by ordering his immediate release. Because petitioner effectively seeks to abort the state court proceeding, this court will abstain.

ORDER

IT IS ORDERED that Robert Butler's petition for a writ of habeas corpus is DISMISSED pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, because petitioner has not made a substantial showing that his constitutional rights have been violated, no certificate of appealability shall issue under 28 U.S.C. § 2253(c)(2).

Entered this 14th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge